UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THOMAS A. GNIPP, as self
trustee under agreement
dated January 20, 2005 and
any unknown heirs, devisees,
grantees, creditors and
other unknown personas or
unknown spouses claiming by,
through and under any of the
above named Plaintiffs,

     Plaintiff,

v.                                    Case No: 2:15-cv-99-FtM-29CM

BANK OF AMERICA N.A.,

     Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion to
Dismiss Plaintiff's Amended Complaint (Doc. #33) filed on March
14, 2016.  Plaintiff filed a Response in Opposition (Doc. #34) on
April 1, 2016.  For the reasons set forth below, the Court grants
the Motion to Dismiss with leave to amend as to Counts I, II, and
III, and dismisses Counts IV and V with prejudice.

**I.**

Thomas A. Gnipp (Plaintiff), proceeding pro se, filed a five-
count Amended Complaint (Doc. #31) against Bank of America N.A.

(BOA) on February 29, 2016.[1]  The Amended Complaint alleges that on May 18, 2006, Plaintiff obtained a loan from Countrywide Home Loans, Inc. (the Countrywide Loan) to purchase a home in North Port, Florida, which loan BOA acquired from Countrywide "sometime later." (Id. p. 2.)  Plaintiff planned to sell his more expensive home in Naples, Florida, which he owned "free and clear," to pay off the Countrywide Loan and "live out the balance of his years comfortably." (Id.)  Real estate values plummeted shortly thereafter, however, and Plaintiff was unable to sell his Naples home. (Id.)  At the same time, the Countrywide Loan became "a negative amortization mortgage" – one for which the balance (and the loan payments) increases each month, while the property value simultaneously diminishes. (Id.)

The situation having become "financially un-sustainable," beginning in November 2008, Plaintiff continually sought various forms of loan relief. (Id. pp. 2-3.)  Despite representing that relief was available, BOA repeatedly denied Plaintiff's requests, since his account was current and he had sufficient net income to cover the mortgage payment. (Id. p. 3.)  Sometime on or around October 20, 2012, Plaintiff called Jessica Sanchez, "whose name

---

[1] On February 13, 2015, this Court dismissed Plaintiff's three-paragraph original Complaint (Doc. #1).   The Court granted Plaintiff leave to file an amended complaint and provided guidance on the pleading requirements of the Federal Rules of Civil Procedure.  The Court also attached three cases (Docs. ##30-1, 30-2, 30-3) to its Order to assist Plaintiff in pleading the elements of the claims he appeared to be attempting to assert.

appeared on [BOA's] denial letters," and she told him that the Countrywide Loan "needed to be in arrears for more than 90 days before" relief would be made available.  (Id.)

Accordingly, Plaintiff did not make a mortgage payment in February 2013.  (Id.)  On March 5, 2013, he received a notice from BOA (Doc. #31-17) indicating that his loan "was in serious default," providing him the right to cure the default, and stating that BOA would accelerate the loan and initiate foreclosure proceedings on the North Port property if Plaintiff did not timely cure the default.  (Id. p. 4.)  Plaintiff alleges that he sent BOA a Qualified Written Request (QWR) (Doc. #31-18) on April 15, 2013, to which BOA did not respond.  (Id.)  Plaintiff also alleges that he sent a request for debt validation (Doc. #31-20) to Butler & Hosch, a law firm hired by BOA to act as a debt collector, to which Plaintiff never received a response.  (Id. p. 5.)  On September 15, 2014, BOA filed a foreclosure action against Plaintiff in Florida state court.[2]  This lawsuit followed.

Based on these allegations, Plaintiff asserts five causes of action against BOA.  Count I alleges a violation of Section 2605(e)(1) of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2600 et seq., based on BOA's failure to respond to Plaintiff's QWR.  Count II contends that the failure to respond

---

[2] The Court takes judicial notice of Bank of America, N.A. v. Gnipp (No. 2014 CA 005349), proceeding in the Twelfth Judicial Circuit in and for Sarasota County, Florida.  (Docs. ##18, 31-23.)

to Plaintiff's request for debt validation violated Section 1692g of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. Count III is based on the claim that BOA prematurely informed credit reporting agencies that Plaintiff had missed a mortgage payment, in violation of RESPA Section 2605(e)(3), causing damage to Plaintiff's credit. Count IV argues that BOA's state-court foreclosure proceeding against BOA is "unwarranted." Count V contends that BOA has "unclean hands."

BOA asserts that the Amended Complaint, "as pled, is one in which it is practically impossible for Defendant to frame a responsive pleading" and seeks dismissal of the Amended Complaint in its entirety for failure to comply with Rule 10(b)'s requirement that claims be stated "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." (Doc. #33, p. 12 (quoting Fed. R. Civ. P. 10(b).) Specifically as to Plaintiff's RESPA claims (Counts I and III), BOA contends that the Complaint does not allege that Plaintiff sent his alleged QWR to BOA's "designated address"; that the letter Plaintiff allegedly sent is not a valid QWR, since it raises no "account error"; that it is unclear what RESPA requirement BOA is alleged to have violated; and that Plaintiff has not adequately pled damages, as is required to state a claim under RESPA. BOA argues that Count II is barred under the FDCPA's one-year statute of limitations and should be dismissed for the additional reason that BOA is not a "debt collector" and thus cannot be held independently or vicariously

liable for Butler & Hosch's alleged failure to respond to Plaintiff's debt-validation request. Regarding Count IV, commencement of an "unwarranted" foreclosure proceeding, BOA contends that this is not a recognized cause of action and that, regardless, this Court should abstain from ruling on the propriety of BOA's state-court foreclosure action against Plaintiff. As to Plaintiff's claim of "unclean hands" (Count V), BOA argues that dismissal is warranted, since unclean hands is a defense, not a stand-alone cause of action. The Court will address each of these arguments in turn.

## II.

Federal Rule of Civil Procedure 8(a) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating a Rule 12(b)(6) motion seeking to dismiss a complaint for failing to comply with Rule 8(a), the Court must accept as true all factual allegations in the complaint and "construe them in the light most favorable to the plaintiff." Baloco ex rel. Tapia v. Drummond Co., 640 F.3d 1338, 1345 (11th Cir. 2011). However, mere "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted).

To avoid dismissal under Rule 12(b)(6), the complaint must contain sufficient factual allegations to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550

U.S. 544, 555 (2007).  To do so requires "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  This plausibility pleading obligation demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555 (citation omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) ("Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." (citation omitted)).  Instead, the complaint must contain enough factual allegations as to the material elements of each claim to raise the plausible inference that those elements are satisfied, or, in layman's terms, that the plaintiff has suffered a redressable harm for which the defendant may be liable.

A pleading drafted by a party proceeding pro se, like the Amended Complaint at issue here, is held to a less stringent standard than one drafted by an attorney, and the Court will construe the allegations contained therein liberally.  Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015).  Nevertheless, "a pro se pleading must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis."  Id.  In other words, pro se status will not salvage a complaint devoid of facts supporting the plaintiff's claims.

**III.**

**A.   BOA Failed to Respond to Plaintiff's QWR (Count I)**

"RESPA prescribes certain actions to be followed by entities or persons responsible for servicing federally related mortgage loans, including responding to borrower inquires." McLean v. GMAC Mortg. Corp., 398 F. App'x 467, 471 (11th Cir. 2010) (per curiam) (citing 12 U.S.C. § 2605).  As relevant here, RESPA requires that "a loan servicer, upon receipt of a qualified written request, . . . provide 'a written response acknowledging receipt of the correspondence' within 20 business days."[3]  Id. (quoting 12 U.S.C. § 2605(e)(1)(A)).  RESPA defines a "qualified written request" as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> **(i)** includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> **(ii)** includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).  Accordingly, a plaintiff asserting a claim for violation of RESPA Section 2605(e) "must allege facts to support that: (1) defendant is a loan servicer, (2) plaintiff[]

---

[3] Twenty days was the statutory acknowledgment period at the time Plaintiff mailed his QWR.  That period was subsequently reduced to five days, pursuant to the Dodd-Frank amendments to RESPA.  See Farson v. Carrington Mortg. Servs., LLC, No. 8:13-CV-2289-T-33TGW, 2013 WL 5705565, at *3 (M.D. Fla. Oct. 18, 2013).

sent defendant a valid QWR, (3) defendant failed to adequately respond within the 20[] day statutory period, and (4) plaintiff[] [is] entitled to actual or statutory damages." Williams v. Am.'s Servicing Co., No. 2:09-CV-775-FTM-29DNF, 2011 WL 1060652, at *2 (M.D. Fla. Mar. 22, 2011).

Count I of the Amended Complaint alleges that BOA is the loan servicer; that Plaintiff sent BOA a valid QWR on April 15, 2013; that Defendant "failed to adequately respond within the 20-day statutory period"; and that Plaintiff is entitled to $500,000.00 in statutory damages. BOA contends that, despite these allegations, dismissal of Count I is warranted for four reasons: 1) Plaintiff did not allege that he sent the QWR to BOA's "designated address"; 2) the letter Plaintiff sent BOA is not a valid QWR; 3) Plaintiff has not adequately pled that Defendant violated RESPA; and 4) the Complaint does not sufficiently plead damages.

### 1) BOA's "Designated Address" for Receiving QWRs

BOA argues that Count I should be dismissed for Plaintiff's failure to "allege or show through attached documents that he sent the QWR to the proper address."[4]  (Doc. #33, p. 4.)  In support thereof, BOA cites a handful of cases it claims stand for the proposition that a loan servicer's requirement to respond to a QWR

---

[4] BOA also seeks dismissal of Plaintiff's other RESPA claim (Count III), which is based on BOA's "premature" disclosure of Plaintiff's loan default to credit reporting agencies, for the same reason.

is triggered only when a plaintiff sends it to the loan servicer's "designated address" for receiving QWRs.

At the time the alleged actions in this case occurred, the law permitted a loan servicer to "establish a separate and exclusive office and address for the receipt and handling of qualified written receipts."   24 C.F.R. § 3500.21(e)(1) ("Regulation X").[5]   It may be the case that a servicer who followed the notice requirements for establishing a QWR address was not required to respond to a communication sent to a different address. See Roth v. CitiMortgage Inc., 756 F.3d 178, 182 (2d Cir. 2014) ("'Failure to send the request to the designated address does not trigger the servicer's duties under RESPA.' As long as a servicer complies with the notice requirements of 24 C.F.R. § 3500.21 for designating a QWR address, a letter sent to a different address is not a QWR." (quoting Berneike v. CitiMortgage, Inc., 708 F.3d 1141, 1149-49 (10th Cir. 2013))).[6]   However, in those cases so holding, the courts could discern from the complaint or attached exhibits that the lender had indeed designated an address for QWRs and the borrower had failed to send its communication to that exclusive address.   E.g., id. at 182; Berneike, 708 F.3d at 1149; Bret Binder v. Weststar Mortg., Inc., No. CV 14-7073, 2016 WL 3762710, at *6-7 (E.D. Pa. July 13, 2016).

---

[5] "Regulation X" is now codified at 12 C.F.R. § 1024.35(c).

[6] The Eleventh Circuit does not seem to have addressed this issue.

Here, it is not clear that BOA even *had* a designated address different from the P.O. Box address to which Plaintiff sent his April 15, 2013 correspondence, and which was listed as the payment address on BOA's Notice of Intent to Accelerate and Foreclose - let alone that Plaintiff was made aware of such address.[7] Accordingly, and particularly in light of his <u>pro se</u> status, Plaintiff's failure to allege that he sent his letter to BOA's "designated address" does not merit dismissal of Counts I or III.

### 2) Whether Plaintiff's Letter to BOA Is a Valid QWR

As noted above, to be a proper "qualified written request," the "written request" must "enable[] the servicer to identify[] the name and account of the borrower" and "include[] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). BOA argues that Plaintiff's letter is not a QWR, since it does not provide the reason(s) Plaintiff believes the account is in error; rather, Plaintiff "merely request[s] additional information concerning charges to the account." (Doc. #33, p. 5.)

---

[7] Plaintiff's certified mail receipt indicates that the QWR was delivered in April 2013. (Doc. #31-18. p. 3.) "[A] document outside the four corners of the complaint may still be considered [on a motion to dismiss] if it is central to the plaintiff's claims and is undisputed in terms of authenticity." <u>Maxcess, Inc. v. Lucent Techs.</u>, Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (citing <u>Horsley v. Feldt</u>, 304 F.3d 1125, 1135 (11th Cir. 2002)).

But Section 2605(e)(1)(B)(ii) is written in the disjunctive. In other words, a communication can satisfy RESPA by "includ[ing] a statement of the reasons . . . that the account is in error," or by "provid[ing] sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Plaintiff's letter arguably does both. By writing that he "dispute[d] the amount that is owed according to the Monthly Billing Statement," Plaintiff identified the basis for his belief that the account was "in error." He also clearly set forth the specific eight pieces of information/documents he sought. Plaintiff's April 15, 2013 written correspondence is thus a valid QWR. See Thomason v. OneWest Bank, FSB, 596 F. App'x 736, 740 (11th Cir. 2014) (per curiam) (pro se petitioner's letters, which "stated his concern that his account erroneously failed to list him as a co-borrower on the loan" and requested documents and information concerning his qualification for certain forms of relief constituted valid QWRs under RESPA).

### 3) Whether Plaintiff Adequately Alleged a Violation of Section 2605(e) and Sufficiently Pled Damages

Finally, BOA argues that Count I should be dismissed because it is unclear from the Complaint how BOA is alleged to have violated RESPA, and because Plaintiff has failed to adequately plead damages. As to the first of these arguments, BOA specifically contends that it is not clear whether Plaintiff is claiming that BOA failed to respond at all within the twenty-day

window or instead that BOA did not issue an "adequate" response. This argument lacks merit.  Count I alleges a violation of Section 2605(e)(1), which Section required BOA to "acknowledge[e] receipt of the correspondence" within twenty days.  It is, therefore, fair to infer that Plaintiff contends BOA did not acknowledge receipt of Plaintiff's QWR within twenty days of receiving it.[8]

BOA's damages argument, however, is well-taken.  "[D]amages are an essential element in pleading a RESPA claim." Renfroe v. Nationstar Mortg., LLC, 822 F.3d 1241, 1246 (11th Cir. 2016). Two types of damages are available under RESPA: "(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section."  12 U.S.C. § 2605(f)(1).  These "additional damages" are typically referred to as "statutory damages." Renfroe, 822 F.3d at 1247.  According to the Amended Complaint, "Plaintiff seeks statutory damages of $500,000 . . . or as the Court deems appropriate." (Doc. #31, p. 4.)

As an initial matter, $500,000.00 in statutory damages is not appropriate, since there is a $2,000.00 limit on the amount of statutory damages a court may award for violations of Section 2605.

---

[8] The Court also rejects BOA's follow-up argument that "[i]f Plaintiff's contention is that the QWR was not timely responded to, then the claim must be dismissed as it does not plead when Defendant responded to the QWR."  Plaintiff's contention is that BOA never acknowledged receipt of Plaintiff's QWR.

12 U.S.C. 2605(f)(1).  More importantly, although the Eleventh Circuit did not officially "rul[e] on the question," it recently observed that a plaintiff probably "cannot recover pattern-or-practice damages in the absence of actual damages." Renfroe, 822 F.3d at 1247 n.4.  Because Plaintiff's Complaint does not allege "actual damages," only "statutory damages of $500,000," the Court concludes that Plaintiff has not adequately pled the damages element of his RESPA Section 2605 claim.  Count I is dismissed without prejudice to amend.

If Plaintiff chooses to file a second amended complaint and reassert a claim for statutory damages under RESPA, that claim must be supported by specific allegations that BOA has engaged in a "pattern or practice" of RESPA violations.  Id. at 1247.  In other words, Plaintiff "must allege some RESPA violations 'with respect to other borrowers.'"[9]  Id. (emphasis added) (quoting Toone v. Wells Fargo Bank, N.A., 716 F.3d 516, 523 (10th Cir. 2013)).  Although the complaint need not disclose the identities of the other borrowers or the specifics of the violations, it must allege enough facts from which the Court may plausibly infer that RESPA violations were BOA's "standard operating procedure." Id. at 1247-48 (quotation omitted); see also Mejia v. Ocwen Loan Servicing, LLC, No. 16-CV-81269, 2016 WL 4587129, at *4 (S.D. Fla.

---

[9] One other alleged violation is not sufficient to establish a "pattern or practice," but four or more additional violations is likely enough.  Renfroe, 822 F.3d at 1247-48.

Sept. 2, 2016) (generic statement that "[t]hrough its own conduct and the conduct of its designated counsel Defendant has shown a pattern of disregard to the requirements imposed upon Defendants" did not allege sufficient facts to plausibly show a pattern or practice of RESPA violations).

**B.   BOA Failed to Protect Plaintiff's Credit Rating (Count III)**

Plaintiff argues that BOA also violated Section 2605(e)(3) of RESPA by reporting Plaintiff's default to credit agencies "just 30 days after [he] missed the mortgage payment in February" – i.e. sometime in March 2013.  Even if true, that conduct does not violate RESPA.  Section 2605(e)(3) does not prevent a loan servicer from ever sending information to a consumer reporting agency about a mortgagee's default on a loan payment; it prohibits a loan servicer who has received a QWR from "provid[ing] information regarding any overdue payment . . . to any consumer reporting agency" for a sixty-day period.  12 U.S.C. § 2605(e)(3). Plaintiff alleges he sent BOA a valid QWR on April 15, 2013 and, as noted above, there is evidence that BOA received the QWR later in April 2013.  Because the Complaint alleges only that BOA provided information prohibited by Section 2605(e)(3) in March 2013, *before* the "silence" period had commenced, not that BOA continued to provide such information during the 60-day period *after* receiving Plaintiff's QWR, Count III is dismissed without prejudice to amend.

**C.    Butler & Hosch Failed to Respond to Plaintiff's Debt-validation Request (Count II)**

Count II alleges a violation of FDCPA Section 1692g.  Section 1692g(a)(5) requires, <u>inter alia</u>, a "debt collector" to inform a consumer that "upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."[10]  15 U.S.C. § 1692g(a)(5).  Butler & Hosch's May 22, 2013 debt-collection letter told Plaintiff this. (Doc. #31-19, p. 2.)  Plaintiff alleges, however, that on June 6, 2013, he exercised that right by sending Butler & Hosch a letter requesting "the name and address of the current owner of the mortgage note and a copy of all monies paid to your client from the inception of this debt." (Doc. #31-20, p. 1.)  He received no response.[11]  Where a debt collector fails to provide the requested name and address of the original creditor, the debt collector is required to "cease collection of the debt, or any disputed portion thereof," until that information is provided.[12]  15 U.S.C. § 1692g(b); <u>Shimek v. Weissman, Nowack, Curry & Wilco, P.C.</u>, 374

---

[10] "The FDCPA's restrictions apply only to 'debt collectors.'" <u>Lodge v. Kondaur Capital Corp.</u>, 750 F.3d 1263, 1273 (11th Cir. 2014).

[11] It appears that Plaintiff's letter was delivered on June 19, 2013.  (Doc. #31-20, p. 2.)

[12] Section 1692k permits recovery of actual and statutory damages against a "debt collector who fails to comply with any provision" of Section 1692, but the Amended Complaint does not request either type of damages.

F.3d 1011, 1014 (11th Cir. 2004) (per curiam), <u>as revised</u> (Aug. 3, 2004) ("The plain language of Section 1692g(b) mandates that a debt collector 'cease collection of the debt' once verification is requested.").

Despite Butler & Hosch's alleged failure to respond to Plaintiff, BOA subsequently initiated foreclosure proceedings against him in state court and recorded a lis pendens against the North Port property on September 15, 2014.[13]  (Docs. ##18, 31-23.) Filing a lawsuit and a lis pendens is the opposite of "ceasing collection of a debt."  <u>See</u> <u>Acosta v. Campbell</u>, No. 6:04—cv-761-ORL-28DAB, 2006 WL 146208, at *16 (M.D. Fla. Jan. 18, 2006) ("A debt collector is free to file suit when collecting on a debt *unless* the debtor timely disputes the debt."); <u>see also</u> <u>Shimek</u>, 374 F.3d at 1014 ("[S]ending a lien to the clerk of the court *after* a verification of the debt was requested is clearly contrary to § 1692g(b)'s requirement that a debt collector shall 'cease collection of the debt' once the verification is requested." (citation omitted)); <u>Anderson v. Frederick J. Hanna & Assocs.</u>, 361 F. Supp. 2d 1379, 1383 (N.D. Ga. 2005) (granting plaintiff's motion for summary judgment on Section 1692g(b) claim where law firm debt collector filed suit after receiving, but before responding to, plaintiff's debt-validation request).

---

[13] Plaintiff's original Complaint was filed on February 13, 2015, which is five months after the September 15, 2014 filing of the foreclosure lawsuit – well within the FDCPA's one-year statute of limitations.  <u>See</u> 15 U.S.C. § 1692k(d).

If Butler & Hosch is the law firm that filed suit on BOA's behalf – which the Complaint appears to contend is the case (Doc. #31, pp. 6-7) – then Plaintiff may have a claim against Butler & Hosch for violating Section 1692g.  However, Count II is asserted against BOA, not Butler & Hosch, who is not a defendant in this case.  Because the Complaint does not allege that BOA is a "debt collector," and because it is unclear from the Complaint on what theory Plaintiff seeks to hold BOA liable for Butler & Hosch's potential violation of FDCPA Section 1692g, Count II will be dismissed without prejudice to amend.

**D.  Defendant's Pursuit of an "Un-warranted" Foreclosure Claim in State Court (Count IV)**

Count IV – titled "Un-warranted Foreclosure" - appears to be a claim for wrongful institution of foreclosure proceedings.  The basis for this claim is apparently an adverse ruling that BOA received in another foreclosure proceeding against a different party in Seminole County, Florida (Doc. #31-24).[14]  The trial court in that case ruled that the mortgage lender, America's Wholesale Lender, was not licensed in Florida, and thus the mortgage loan for the property at issue was invalid and void.  (Id. p. 3.)  In turn, BOA lacked standing to pursue a foreclosure action against the mortgagee.  (Id.)  Because America's Wholesale Lender is the same lender for the Countrywide Loan, Plaintiff contends that "the

---

[14] Bank of America, N.A v. Nash, Case No. 59-2011-CA-004389.

start of a foreclosure proceeding [against him in state court] was un-warranted." (Doc. #31, p. 7.)

As an initial matter, the opinion Plaintiff references was issued on October 16, 2014, one month *after* BOA instituted its foreclosure proceedings against Plaintiff. Furthermore, that opinion has since been reversed by the Florida District Court of Appeals for the Fifth District. Bank of Am., N.A. v. Nash, No. 5D14-4511, --- So.3d ---, 2016 WL 2596015, at *1 (Fla. 5th D.C.A. 2016) (per curiam) (concluding that BOA "had standing to foreclose" on defendant's defaulted mortgage loan). Moreover, there is no cause of action in Florida for wrongful institution of foreclosure proceedings, only wrongful foreclosure. Raines v. GMAC Mortg. Co., No. 309-CV-00477J-25HTS, 2009 WL 4715969, at *2 (M.D. Fla. Dec. 10, 2009); Bank of New York Mellon v. Reyes, 126 So. 3d 304, 309 n.4 (Fla. 3d DCA 2013). Because Plaintiff does not allege that the North Port property has been sold at a foreclosure sale, he cannot state a valid claim for wrongful foreclosure.[15]  In re Taylor, Bean, & Whitaker Mortg. Corp., No. 3:09-BK-7047-JAF, 2011 WL 5245420, at *5 (Bankr. M.D. Fla. Oct. 24, 2011) ("A claim for wrongful foreclosure requires that the property in question be

---

[15] Even if Plaintiff could state a redressable claim based on BOA's wrongful institution of foreclosure proceedings, the Court would likely abstain from adjudicating that claim. See CCB, LLC v. BankTrust, 438 F. App'x 833, 834 (11th Cir. 2011) (per curiam); Sergeon v. Home Loan Ctr., Inc., No. 3:09-CV-01113-J-32, 2010 WL 5662930, at *8 (M.D. Fla. Oct. 26, 2010), report and recommendation adopted, No. 3:09-CV-1113-J-32JBT, 2011 WL 308176 (M.D. Fla. Jan. 27, 2011).

sold at a foreclosure sale." (citations omitted)); see also Hack v. Wachovia Bank, N.A., No. 12-21436-CIV, 2012 WL 3043017, at *3 (S.D. Fla. July 25, 2012) (finding claim for wrongful foreclosure unripe where "state court action for foreclosure against Plaintiffs [was] still pending"). Accordingly, Count IV is dismissed with prejudice.

**E.   BOA's "Unclean Hands" (Count V)**

Plaintiff asserts that BOA acted with "unclean hands" and lists eight specific allegations in support thereof. These allegations either parrot those already raised in the previous four counts or assert additional ways in which BOA acted unfairly or deceptively toward Plaintiff. As the Court stated when it dismissed Plaintiff's original Complaint, "unclean hands" is a defense to an equitable claim, not an independent cause of action. (Doc. #30, p. 6 n.4); see also Branch Banking & Trust Co. v. S & S Dev., Inc., 620 F. App'x 698, 701 (11th Cir. 2015) (per curiam); Cong. Park Office Condos II, LLC v. First-Citizens Bank & Trust Co., 105 So. 3d 602, 609 (Fla. 4th DCA 2013). Put another way, one who is defending against a claim may invoke unclean hands as a shield against liability, but a plaintiff cannot use the theory as a liability sword. Count V is thus dismissed with prejudice.[16]

---

[16] To the extent the conduct alleged in Count V may constitute a violation of a state statute, such as Florida's Deceptive and Unfair Trade Practices Act, or be redressable through a common law cause of action – for example, the breach of an implied covenant of good faith and fair dealing – Plaintiff may plead such cause(s) of action in the second amended complaint.

The Court stresses that, should Plaintiff choose to file a second amended complaint, he must follow the pleading requirements set forth the Federal Rules of Civil Procedure.  In particular, the allegations should be stated "in numbered paragraphs, each limited as far as practicable to a single set of circumstances," rather than in long, run-on paragraphs.  Fed. R. Civ. P. 10(b).

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. #33) is **GRANTED without prejudice to amend** Counts I, II, and III; Counts IV and V are **dismissed with prejudice**.  Plaintiff shall have until October 5, 2016 to file a second amended complaint, if he so chooses.

**DONE and ORDERED** at Fort Myers, Florida, this 14th day of September, 2016.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Parties and Counsel of Record